## J. S. McDONNELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

### Docket No. 13546. Promulgated April 2, 1927.

1. The 50 per cent fraud penalty asserted for filing a false and fraudulent return with intent to evade tax approved, where the returns filed were admittedly false, grossly understated the income, were filed without reference to readily accessible means of determining income received, and were allowed to stand without amendment until errors were discovered by revenue agents, though petitioner knew he was under obligation to amend, and where the taxpayer's explanations for omissions of income items were so conflicting as to be unconvincing.

2. The 50 per cent fraud penalty is measured by 50 per cent of the amount of tax due in excess of that shown to be due by the return, though a part of the total deficiency had been determined, assessed, and paid prior to the deficiency determination forming the basis for appeal.

3. The Commissioner's failure to comply with section 1005 of the Revenue Act of 1924, by notifying the taxpayer in writing that an additional examination of books was necessary, may not be interposed as a defense invalidating the deficiency based largely upon information derived from other sources, where the examination was conducted without objection by the taxpayer, as the protection afforded by section 1005 was waived by the failure to object.

*M. A. Matlock, Esq.,* for the petitioner.
*Thomas P. Dudley, Esq.,* and *Robert A. Littleton, Esq.,* for the respondent.

This proceeding results from the determination by the Commissioner of deficiencies in tax and the imposition of the 50 per cent fraud penalty for the calendar years 1920, 1921, and 1922, in the total amount of $28,405.50. In the original petition filed, three errors are assigned as follows:

(1) The respondent did not make a legal determination of the deficiencies for the years 1920 and 1921, in that the provisions of section 1005 of the Revenue Act of 1924 were not complied with.

(2) The respondent committed error in his determination that the petitioner, for the years in question, made a willful and false return with intent to evade the tax or defraud.

(3) The respondent erred in that he proposed to assert penalties upon deficiencies which do not exist.

In an amended petition filed at the hearing of this case, petitioner assigned additional errors for all the years involved. For the year 1920 (1) the respondent refused to allow a loss of $1,914.72 sustained in the joint trading account of McDonnell and Matthews and instead charged petitioner with a profit of $919.20 from that source; (2) refused to allow a loss of $355.65, which represents an amount stolen from the safe of the petitioner; (3) failed to allow as a deduction taxes paid to Jefferson and Pulaski Counties, Arkansas, in the amount of $2,000; (4) failed to allow $8,929.73 as a deduction for bad debts. For the year 1921, (1) refused to allow as a deduction state and county taxes paid to Jefferson and Pulaski Counties, Arkansas, in the amount of $2,000; (2) refused to allow as a deduction, a donation of $200. For the year 1922, (1) failed to allow as a deduction, $4,500 as a loss sustained in the trading account of McDonnell and Matthews; (2) failed to allow as a deduction, $2,000 paid to Jefferson and Pulaski Counties, Arkansas, for state and county taxes.

### FINDINGS OF FACT.

Petitioner is an individual, residing at Altheimer, Ark., and during the years in question, was engaged in the mercantile and cotton business. His income is to be almost entirely attributed to the business in which he was engaged, together with interest received from bonds or other evidences of indebtedness. For each of the years here involved, with the possible exception of 1922, petitioner delayed the preparation and execution of his Federal income-tax return until practically the last day allowed by the statute for filing returns. He then went to the office of the local collector, where his returns were prepared by a deputy collector, who used such figures as were called off to him by the petitioner. His returns for 1920, 1921, and 1922, were prepared and filed on March 15, 1921, March 14, 1922, and February 26, 1923, respectively, and no further returns for those years have since been filed.

Revenue Agent John B. Wishendorff made an investigation of the returns filed by the petitioner for the years 1917 to 1921, inclusive, and such records as the petitioner had for those years, submitting his report to the respondent under date of February 20, 1923, said report recommending (and so far at least as the years

1920 and 1921 are concerned there is no dispute as to the correctness thereof) additional taxes in the following amounts:

| | |
|---|---:|
| 1917 | $1, 773. 18 |
| 1918 | 12, 351. 93 |
| 1919 | 11, 650. 70 |
| 1920 | 3, 439. 51 |
| 1921 | 1, 406. 29 |

The respondent, in auditing the report of Agent Wishendorff, found that he had not included in income various items of interest which information returns on file in the office of the respondent indicated the petitioner had received, and accordingly under date of February 12, 1925, the revenue agent in charge was directed by respondent to cause an investigation to be made to clear up this discrepancy. Under date of February 16, 1925, Revenue Agent James F. Shofner was directed by the revenue agent in charge to reconcile the discrepancy and to submit to respondent a supplemental report. Shofner submitted his report under date of May 26, 1925. Except for the items relating to the petitioner's mercantile business at Altheimer, and his dealings with R. E. Matthews, his report was not based on any books or records of the petitioner. This report was audited by the respondent, and the deficiencies here in question are based thereon. The income shown on Shofner's report exceeded that shown on Wishendorff's report by $15,546.96 for 1920 and $14,902.84 for 1921. The income returned by the petitioner for 1920 and 1921, and the amounts as found by Revenue Agents Wishendorff and Shofner and approved by respondent, are as follows:

| Year. | Returned by petitioner. | Agent's reports. |
|---|---|---|
| 1920 | $16, 180. 50 | $49, 738. 94 |
| 1921 | 25, 681. 00 | 47, 292. 30 |

For the year 1922, petitioner reported income of $16,123.70, whereas Agent Shofner in his report dated May 6, 1925, found, and respondent has approved his findings, that petitioner received income in the amount of $55,311.26.

The principal items of income omitted in the returns filed by petitioner, and resulting in the proposed deficiencies for the years in controversy, relate to the understatement of the amount of interest received, failure to report gains derived from dealing in cotton futures, failure to include in income rents received from real estate, and understatement of income on the books of the mercantile business at Altheimer, Ark. The failure to so report the income from

these sources, forms the basis for the penalty asserted by the respondent.

In the returns filed for 1920, 1921, and 1922, petitioner reported interest received in the amounts of $3,550, $3,625, and $3,675, respectively. Respondent determined, and no error is assigned to such determination, that interest was received by the petitioner in 1920 in the amount of $11,701.07, in 1921 in the amount of $18,694.72, and in 1922 in the amount of $19,526.63.

Practically the entire amount of interest received during the years in question was received from five sources, namely, the Beal-Burrow Dry Goods Co., Beal-Burrow Realty Co., Pine Bluff Hotel Co., Lula V. Dibbrell, and George W. Donaghey. The reason as signed for failure to report interest received from Beal-Burrow Dry Goods Co. is that the partners of that company had an agreement whereby the treasurer of that concern was to file returns for the partners. The agreement, which petitioner, along with other partners, signed, reads as follows:

This agreement, made this 4th day of May, A. D. 1920, by and between all the partners doing business as the BEAL-BURROW DRY GOODS COMPANY, WITNESSETH:

WHEREAS, Steps have been taken toward perfecting the organization of the BEAL-BURROW DRY GOODS COMPANY as a partnership unlimited and ordinary, and this has been accomplished, with the result of a substantial saving ·of money to the parties hereto because of the necessary reduction of Federal Taxes occasioned by the transformation of the organization from that of a joint stock association, and

WHEREAS, the partnership has thereby been financially strengthened by the unlimited liability of the financially responsible partners, whose entire assets are liable for all obligations of the business, and

WHEREAS, considerable time, inconvenience and expense will be saved to each of the parties hereto if their income taxes are figured, compiled, returned and paid by the officers of the business,

Now, THEREFORE, in consideration of the premises, the time, inconvenience and expense to be saved and the mutual promises of each of the parties hereto, it is hereby understood and agreed as follows:

That the Treasurer of the BEAL-BURROW DRY GOODS COMPANY shall, annually, at the proper time, make and file for each of the parties hereto their Federal Income Tax return showing income from this partnership only, including salary from the partnership to the parties hereto and bonus money, if any is given by the partnership, and the said Treasurer shall pay that amount of Federal Income Taxes which may be legally due from the parties hereto on account of and in proportion only to their income from this business, and all amounts so paid shall be charged to expense of conducting the partnership business, the same as rent and other items, and shall be first paid and take precedence over any other payments to the Federal Government or amounts due or accrued to the parties hereto from said partnership or from any other source, as profit, salary, or otherwise.

And we each of us hereby ratify and confirm the action of said Treasurer in paying out for the year 1919 our income taxes and charging same to expense of doing business, in the manner above agreed upon.

Witness our hands and seals this day and year first above written.

Petitioner did not inquire, during the years here involved, whether returns were being made as provided by the agreement, nor did the treasurer advise him that he was or was not making such returns. The secretary of Beal-Burrow Dry Goods Co. did make returns for some of the partners, but only for those partners who furnished full information as to their income from all sources and all of the deductions claimed.

Included in the amount of interest not reported for the year 1920 was $4,810 received during that year from bonds of the Pine Bluff Hotel Co., held by the petitioner, and for 1921 a like amount received on those bonds during that year, and for 1922, $4,485 received in 1922.

Interest payments due the petitioner from the five sources enumerated were made annually or semi-annually to two banks with which petitioner had accounts, and although he kept no books showing interest received, the amount received each year could have been ascertained with little difficulty through examination of his bank books. The revenue agents obtained their information of the amount of interest received from these sources, not from the petitioner, but by checking bank records and records of persons or concerns paying the same.

No records were maintained by petitioner of his dealings in cotton futures during any of the years in question. He dealt in futures with some twelve or fifteen brokers, who rendered statements from time to time, advising him of his profits or losses. When a given transaction was closed, petitioner considered any statements concerning the same of no further use, and they were destroyed. The respondent accepted the findings of the revenue agent and determined that profits from this source amounted to $4,917.32 for 1920, $839.82 for 1921, and $5,493.40 for 1922, and no error is assigned by the petitioner to such determination of income.

Respondent determined that petitioner received rents from property owned in Pine Bluff, Ark., in the amounts of $531.36 for 1920, $564 for 1921, and $629.05 for 1922. Petitioner returned no income from these sources.

Petitioner assigns as his reason for failure to return income from his mercantile business at Altheimer, the fact that the books of the business were never maintained in a current manner and from the entries of the books he was unable to ascertain the income received. He employed a bookkeeper to look after these books and made no supervision of them himself to ascertain their accuracy. The petitioner also claims that numerous bad debts and losses were sustained during the years but were not taken as deductions.

In the year 1920 there was stolen from the safe of petitioner the sum of $355.65, which should be allowed as a deduction from income for the year 1920.

In the year 1921, petitioner paid to the Presbyterian Church of Little Rock, Ark., the sum of $200, which should be allowed as a deduction from income for 1921.

It was stipulated at the hearing that the following payments were made and losses sustained for the respective years:

| | | |
|---|---|---:|
| 1920. | State, county and city taxes paid to Pulaski County, Ark | $647. 30 |
| | State, county and city taxes paid to Jefferson County, Ark | 519. 77 |
| | Loss sustained from the joint trading account of McDonnell and Matthews | 1, 915. 58 |
| 1921. | State, county and city taxes paid to Pulaski County, Ark | 804. 73 |
| | State, county and city taxes paid to Jefferson County, Ark | 1, 034. 24 |
| 1922. | State, county and city taxes paid to Pulaski County, Ark | 1, 031. 82 |
| | State, county and city taxes paid to Jefferson County, Ark | 676. 83 |
| | Loss sustained in joint trading by McDonnell and Matthews, of $1,030.88, one-half of which was a loss sustained by petitioner | 515. 40 |

The petitioner is entitled to deductions for the payments made and losses enumerated for the years specified above.

It is also stipulated that the books of the joint account of McDonnell and Matthews show a profit for 1923 covering the period from January 1, 1923, to March 30, 1923, of $55.83, which entries were adjustments for trading operations taking place in prior years and do not represent trading in 1923; that the personal account of R. E. Matthews appearing on the books of J. S. McDonnell disclosed a debit balance at December 31, 1922, of $1,629.23; that a charge of $1.10 was made to the personal account of Matthews on January 13, 1923, such charge representing a payment made for a telephone call by Matthews in December, 1922; that the debit balance of the personal account of Matthews was $1,633.33 as of January 31, 1923, and was charged to profit and loss on the books of the petitioner on December 31, 1923. Petitioner and Matthews discontinued their cotton-trading business on or about Christmas, 1922.

Respondent determined the deficiencies in tax and the penalties for the years in question as follows:

1920.

| | | |
|---|---|---:|
| Total tax assessable | | $9, 108. 29 |
| Less: | | |
| Tax previously assessed on original return filed | $1, 395. 79 | |
| January, 1924, additional assessment | 3, 439. 51 | |
| | | 4, 835. 30 |
| Deficiency | | 4, 272. 99 |
| Penalty as provided in sec. 250 (b), Revenue Act of 1918 ($9,108.29 less $1,395.79=$7,712.50×50%) | | 3, 856. 25 |

**1921.**

Total tax assessable_____ $8, 321. 09
Less:
    Tax previously assessed on original return filed_____ $3, 003. 69
    January, 1924, additional assessment_____ 1, 406. 29
                                                   4, 409. 98

Deficiency_____ 3, 911. 11
Penalty as provided in sec. 250(b), Revenue Act of 1921 ($8,321.09
    less $3,003.69=$5,317.40×50%)_____ 2, 658. 70

**1922.**

Total tax assessable_____ 10, 332. 72
Less: Tax previously assessed on original return_____ 1, 195. 09

Deficiency_____ 9. 137. 63
Penalty as provided in sec. 250(b), Revenue Act of 1921, of 50%____ 4, 568. 82

OPINION.

MILLIKEN: Petitioner avers that there has not been a "legal determination" of deficiencies for the years 1920 and 1921 by the respondent, in that the provisions of section 1005 of the Revenue Act of 1924 were not complied with. We are unable to accept his views in the matter. Section 1309 of the Revenue Act of 1921 and section 1005 of the Revenue Act of 1924 contain identical provisions, as follows:

No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

It is not disputed that the agent of the respondent did not present to petitioner a notification in writing that an additional investigation was necessary. No doubt the petitioner might have refused to permit Revenue Agent Shofner access to his books at Altheimer, Ark., when he conducted his investigation without prior notification to him by the respondent of his intentions to conduct the same, as provided in section 1005. However, that section of the statute merely provides for the relief from unnecessary examinations of a taxpayer's books and does not propose to provide that any deficiency resulting from such investigation shall be void. Petitioner did not object to the examination of his books at Altheimer, at least we have no evidence to that effect, and his failure so to do may be taken as a waiver of the protection the statute afforded. It is pertinent to note, also, that petitioner maintained no books or records of that part of his income which forms practically the entire basis for the deficiences here in question. The revenue agents determined almost his entire income from deposits at the bank at which petitioner dealt

and from the concerns that had paid interest to petitioner during the years involved. He had no books relative to most of these items, and, accordingly, can not set up the defense of a reexamination of something he did not possess. Petitioner is in an anomalous position in objecting to the reexamination of his books, such as he had, for he testified that when filing his returns he knew that they were not true reports of income and that he filed them with the expectation that Government agents would check up his returns and that his true income would be made subject to tax. In relying upon section 1005 as a protection, he is denying to the Government the right to do that which he expected them to do, namely, to check up and ascertain his true income. There might be the interesting question in instances of a false and fraudulent return, where no statute of limitation pertains, as to the applicability of section 1309 and section 1005, but in view of our previous statements no discussion seems necessary.

We next come to the important question presented in the case at bar. Were the returns filed by petitioner for the years 1920, 1921, and 1922, showing an understatement of income, false or fraudulent, with the willful intent to evade the tax? Before we can determine if such be the case, the facts and circumstances incident and subsequent to the filing of the returns for the years in question, should, in this case, be weighed. The petitioner is a business man of advanced years, yet active and aggressive. He has been in business for over forty-five years, is possessed of considerable wealth, and his affluence is to be ascribed to his own efforts. He was fully conversant with the value of a dollar and the necessity in his business for the prompt collection of accounts due from a debtor. Federal income-tax returns were not new to him, for the evidence shows he had filed returns for at least three years preceding the years in question. He knew of his obligation to the Government in this respect. We find him, as the time arrives for filing the returns for each of the years in question, dilatory in securing the information upon which the returns were to be based. He had interest payments for each of the years in question, in substantial amounts, which he knew he had received, for he testified the banks collected the interest payments when due and he had noted their collection on his pass book. The principal payments of interest were not large in number, never exceeding payments from five or six sources in any one year. The payments were made to him on a semiannual or annual basis. He testified that with but little effort he could have ascertained the correct amount of interest in any given year when filing his tax return. He testified that he knew when he filed his returns that the information contained therein was incorrect and his counsel admitted that they were false and petitioner testified he

expected to subsequently file a correct return, yet we are unable to find that he made any effort to correctly report his income for the years in question. He also testified he knew it was his duty to correctly report his income and not to delay until the Government agent checked up his accounts, yet we find the petitioner making no effort to divulge to the Government his true income, and doing nothing until approached by the agents of the respondent and then his cooperation was not active, only passive, and the agents of the respondent were left to resort to bank statements and data obtained from concerns or persons who paid interest to the petitioner. The understatement of income does not relate to only one year—it relates to all the three years in question, and to essentially the same kind of income understated. The income understated seems to grow with the years, for in the first year, i. e., 1920, there was an understatement of approximately $33,000, and in 1922 there was an understatement of approximately $39,000. What reasons does the petitioner assign for such understatement? He testified that he sought. to approximate his interest income for each of the years in question by balancing it with the amount paid. At the hearing of this case, petitioner did not submit any proof as to the interest which he paid. His petition has been pending with this Board since April, 1926, and he was given thirty days' advance notice of the date of this hearing, which took place on October 8, 1926, and if he had a defense that he had paid sums as interest which would offset the interest received, he has had ample opportunity to present proof thereof, and his reason for the understatement, in this particular, is of no avail. It is not enough that the petitioner should deal in generalities at the hearing of this case, and state that he had paid sums as interest without giving any basis for such statement, or facts or figures in support thereof.

The further reason assigned for his failure to report interest, is that he thought, by the terms of the agreement between the partners of the Beal-Burrow Dry Goods Co., the interest payments from that source would be returned for him. This defense is open to the attack that large sums of interest were received from sources other than the Beal-Burrow Dry Goods Co. and as to which the agreement did not attempt to provide. He testified that he made no inquiries, during any of the years, to ascertain if such reports were being made for him, and also that he was not informed by the treasurer of the Beal-Burrow Dry Goods Co. that reports of his income were being made for him. The evidence also shows that petitioner reported as income the salary which he received from the Beal-Burrow Dry Goods Co., indicating, further, that he was not depending upon the agreement. He reported this item in the tax

returns filed by himself, yet he failed to mention the interest. Counsel for respondent asked petitioner the following question as to why he reported salary from the Beal-Burrow Dry Goods Co. if he was depending upon the agreement, and why he left out interest from the Beal-Burrow Dry Goods Co.:

Q. Why did you put in salary and leave out interest?

A. Because I thought I included all I owed the Government in that block— the sum of interest there.

If petitioner thought he was including in his return filed the entire amount of interest received from the Beal-Burrow Dry Goods Co., he could not have, at the same time, been relying upon the agreement recited in the findings of fact, whereby he thought another was going to report it for him.

A large amount of interest from bonds of the Pine Bluff Hotel Co. which petitioner owned was not reported as income. No error was assigned in the petition to the action of the respondent in adding such interest to his income for the years in dispute. At the hearing the petitioner testified that he had made a gift of some of the bonds prior to the years in question. If the gift was made, proof should have been introduced in support thereof, and we are not warranted in accepting generalities without a definite basis of fact for their support.

Petitioner assigns as his reason for failure to report income from dealing in cotton futures, that he believed that the Government did not tax gains arising from this source, and also for the reason that he had large losses in the years 1923 and 1924. It is obvious that petitioner did not know, when he filed his returns in March, 1921, March, 1922, and February, 1923, that he would have large losses for the years 1923 and 1924, for, at the time those returns were filed, the years had not passed in which the losses had occurred.

It is true that petitioner is entitled to additional deductions from income because of state, county and city taxes paid during the respective years, and some minor adjustment in the trading account which he maintained. These deductions, however, are of a minor nature when compared with the understatements of income and do not change the force of the fact that no deductions have been proven which would materially offset the large understatement of income from interest received. It may also be that petitioner is entitled to some deductions for bad debts for the year 1920. We have no evidence before us from which it could be determined that the debts were ascertained to be worthless and charged off within that taxable year. Cf. *Georgetown Grocery Co.* v. *United States*, 63 Ct. Cls. 160.

This case is not one where a mere clerical error results in the understatement of income, or where there is a mistaken idea as to some regulation or requirement of the respondent, cf. *Cooper* v. *United States*, 9 Fed. (2d) 216; nor is it a case of constructive fraud, see decision of the United States District Court for the Western District of Pennsylvania, in the case of *United States* v. *Whyel*, 19 Fed. (2d) 260. Nor does it represent a case involving a question of fact upon which differences of opinion might reasonably exist, cf. *Ohio Farmers' Ins. Co.* v. *Hard*, 59 Ohio St. 248; 52 N. E. 635. Nor have we in this case the fact that the return was filed by the petitioner based upon erroneous legal or accounting advice given him and upon which he honestly relied, cf. *Beam* v. *Hamilton*, 289 Fed. 9. Nor do we have in this case the question of a device relied upon to reduce taxes, which device was lawful, cf. *United States* v. *Isham*, 17 Wall. 496; *Weeks* v. *Sibley*, 269 Fed. 155.

Based upon all the facts of record in this proceeding, we are of the opinion that the respondent did not commit error in the imposition of the 50 per cent penalty, pursuant to the provisions of section 250(b) of the Revenue Acts of 1918 and 1921.

We are also of the opinion that no error was committed in the method of computation of the deficiencies and penalty for each of the years, as set forth in the findings of fact.

The deficiencies should be redetermined, making adjustments for the errors stipulated and found, as set forth in the findings of fact.

*Judgment will be entered on 20 days' notice, under Rule 50.*