Thelma Blevins v. Commissioner.
Blevins v. Commissioner
Docket No. 49811.
United States Tax Court
T.C. Memo 1955-211; 1955 Tax Ct. Memo LEXIS 125; 14 T.C.M. (CCH) 840; T.C.M. (RIA) 55211; July 27, 1955
*125 Held, deficiencies determined using the net worth method upheld in part. Held further, 25 per cent additions to tax for failure to file returns upheld. Held further, respondent has failed to show that part of the deficiencies was due to fraud with intent to evade tax. Lee S. Jones, Esq., for the petitioner. John L. Carey, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioner and additions to *126 tax as follows: Additions to Tax
Year
Deficiency
Sec. 291(a)
Sec. 293(b)
1940
$ 54.90
$ 13.73
$ 27.45
1941
428.34
107.08
214.17
1942
873.50
218.37
436.75
1943
882.97
220.75
441.49
1944
1,213.75
303.44
606.88
1945
616.25
154.06
308.13
1946
356.25
89.06
178.12
1947
745.75
186.44
372.88
1948
482.04
120.51
241.02
1949
783.25
195.81
391.62
1950
470.19
117.55
235.10
1951
1,380.47
345.12
690.23
Respondent has made a jeopardy assessment. The questions for decision are: 1. Whether the Commissioner erred in determining deficiencies in the income tax of petitioner using the net worth method. 2. Whether the Commissioner erred in determining additions to tax for failure to file returns. 3. Whether the Commissioner erred in determining additions to tax for fraud. 4. Whether the statute of limitations has run. Findings of Fact The petitioner, Thelma Blevins, also known as Fay Clark, resided in Louisville, Kentucky throughout the taxable years involved. She did not file an income tax return in any of those years. Petitioner's education did not extend past the fifth grade. She married Harry A. Blevins in *127 1927. They were divorced in 1936 and remarried in 1937. In 1937 she acquired a home at 664 South 23rd Street, Louisville, Kentucky, where she has resided since that time. The home was subject to a mortgage. She and her husband separated again in 1941 and were divorced for the second time in October 1942. The petitioner has one child, a son, who was 26 years of age in September 1954. He lived with the petitioner until he entered the military service on September 17, 1945. He carried papers for several years until, in October 1943, at the age of 15, he went to work for the L. & N. Railroad Co. He worked there until he resigned several months prior to entering the military service. He gave his mother around $10 per week during the time he was working or at least $100 in 1943, $500 in 1944, and $130 in 1945. He was discharged from the service in August 1949. He gave his mother his mustering-out pay and insurance fund which amounted to approximately $200. Petitioner did not keep any books or records. Respondent determined the petitioner's net income as follows: THELMA BLEVINS (ALIAS FAY CLARK)
Assets
1939
1940
1941
1942
U.S. Government Bonds
$ 300.00
$ 375.00
$2,475.00
$5,250.00
Residence, 664 S. 23rd
1,700.00
1,700.00
1,700.00
1,700.00
St.
Cash (In safe deposit
box)
Savings Account, 1st
Nat.
Bank
Total Assets
$2,000.00
$2,075.00
$4,175.00
$6,950.00
Liabilities
Mortgage -
Greater Louisville
$ 699.18
$ 498.83
Net Worth end of year
1,300.82
1,576.17
$4,175.00
$6,950.00
Net Worth beginning of
year
1,300.82
1,576.17
4,175.00
Net Worth increase
275.35
2,598.83
2,775.00
Living Expenses
2,000.00
2,000.00
2,000.00
Net Income
$2,275.35
$4,598.83
$4,775.00
*128 THELMA BLEVINS (ALIAS FAY CLARK)
Assets
1943
1944
1945
1946
U.S. Government Bonds
$7,500.00
$10,875.00
$12,000.00
$12,375.00
Residence, 664 S. 23rd
1,700.00
1,700.00
1,700.00
1,700.00
St.
Cash (In safe deposit
box)
Savings Account, 1st
Nat.
Bank
Total Assets
$9,200.00
$12,575.00
$13,700.00
$14,075.00
Liabilities
Mortgage -
Greater Louisville
Net Worth end of year
$9,200.00
$12,575.00
$13,700.00
14,075.00
Net Worth beginning of
year
6,950.00
9,200.00
12,575.00
13,700.00
Net Worth increase
2,250.00
3,375.00
1,125.00
375.00
Living Expenses
2,000.00
2,000.00
2,000.00
2,000.00
Net Income
$4,250.00
$ 5,375.00
$ 3,125.00
$ 2,375.00
THELMA BLEVINS (ALIAS FAY CLARK)
Assets
1947
1948
1949
1950
1951
U.S. Government Bonds
$14,625.00
$15,000.00
$15,075.00
$15,075.00
$15,900.00
Residence, 664 S. 23rd
1,700.00
1,700.00
1,700.00
1,700.00
St.
Cash (In safe deposit
2,700.00
box)
Savings Account, 1st
Nat.
Bank
1,804.94
2,015.28
2,032.75
Total Assets
$16,325.00
$16,700.00
$18,579.94
$18,790.28
$22,332.75
Liabilities
Mortgage -
Greater Louisville
Net Worth end of year
16,325.00
16,700.00
18,579.94
18,790.28
22,332.75
Net Worth beginning of
year
14,075.00
16,325.00
16,700.00
18,579.94
18,790.28
Net Worth increase
2,250.00
375.00
1,879.94
210.34
3,542.47
Living Expenses
2,000.00
3,000.00
3,000.00
3,000.00
3,000.00
Net Income
$ 4,250.00
$ 3,375.00
$ 4,879.94
$ 3,210.94
$ 6,542.47
*129 The above computation failed to make any allowance for certain bank accounts. Petitioner had a bank account at the Citizens Union National Bank, having a balance of $680.53 and $695.71 at the end of 1939 and 1940, respectively. She closed out the account on January 2, 1941. She had made a number of withdrawals from this account in 1937 and 1938. Petitioner opened a checking account on August 19, 1941 at the Royal Industrial Bank, Louisville, Kentucky. The balances in this account were $500, $708.47, and $722.08 at the end of 1941, 1942, and 1943, respectively. The account was closed in 1944. Petitioner opened an account in 1949 at the First National Bank in Louisville, Kentucky with an $1,800 check received from the sale of a 1949 Packard automobile purchased in January 1949. The car had been registered in the name of petitioner's son, but it was not shown that petitioner did not furnish the money to buy the car. Her son wrecked the car in West Memphis, Arkansas. Petitioner recovered the car and around June 1, 1949 resold it to the dealer from whom it was originally purchased. Petitioner purchased a new stove and refrigerator in 1948. During the taxable years involved she also *130 purchased a new hot water heater, erected a new fence, and had the house painted twice. Petitioner first met James L. Mulhall in March 1941, at which time she was still married and living with her husband. Mulhall was likewise married and had two children. He has continuously furnished the support for his wife and children throughout the years involved. Mulhall frequently visited petitioner and, during the years involved, had immoral relations with her. He also accompanied her on her trip to Memphis, Tennessee when her son was involved in the automobile accident mentioned above. Mulhall paid petitioner $1500 in 1941 and $2,500 in each of the years 1943 to 1951, inclusive. Correcting respondent's net worth computation for the amounts petitioner received from Mulhall and her son and for the above described bank accounts, results in an income as follows: Year
Income
1940
$2,287.32
1941
4,406.33
1942
4,983.47
1943
4,163.61
1944
4,152.92
1945
2,995.00
1946
2,375.00
1947
4,250.00
1948
3,375.00
1949
4,679.94
1950
3,210.34
1951
6,542.47
Petitioner used her home to operate a house of prostitution. In 1951 there were around six girls who went there. *131 If they took their own "date" they paid a rental fee for the use of the upstairs bedroom. If petitioner supplied the "date," petitioner would take one-half of the fee. Petitioner staged immoral shows for a fee and personally acted as a prostitute. She also furnished call girls for customers in Louisville hotels. In 1948 petitioner complied with a letter requesting that she come in and answer questions concerning her tax liability for the years 1944, 1945, 1946, and 1947. Petitioner and Mulhall signed a statement that he had been supporting her, and petitioner was told by the revenue agent that she did not owe any tax. Petitioner furnished no records and none were examined by the Bureau of Internal Revenue at that time. No written notice of reexamination of the taxable years 1944, 1945, 1946, or 1947 was given petitioner. Opinion Respondent determined deficiencies in the income tax petitioner by computing her net income on the basis of her net worth increase plus expenditures. Petitioner does not question the propriety of using this method to determine her income, but only contests the accuracy of the computation. We therefore limit our discussion to the adjustments in the *132 computation which are requested by petitioner and contested by respondent. Beginning Cash. Petitioner testified that from the time she was married she saved around ten dollars per week of the money given her by her husband to run the house. She contends that in 1940 she had around $5,500 in cash which she kept in a large thermos jug in the kitchen closet, and that in 1942 the amount had increased to around $7,000. Petitioner's contention is based solely upon her own uncorroborated, self-serving testimony. In a number of other respects petitioner's testimony was shown to be, at best, inaccurate and unreliable. We are able to place little credence in her testimony, even when uncontradicted, unless supported by documentary corroboration. Cf. M. Rea Gano, 19 B.T.A. 518, 526: Frank Imburgia, 22 T.C. 1002, 1018. The story of the cash hoard is not only uncorroborated, but on its face is highly improbable especially in light of petitioner's frequent use of a savings account between 1935 and 1941 and a checking account between 1941 and 1944. Also, she testified that the money was mostly in fifty and hundred dollar bills. To have obtained a large number of such *133 bills would probably have necessitated a number of trips to the bank, and we find it implausible that if the money had in fact existed, petitioner would have brought the money home rather than deposit it in her account. Under the circumstances, we are unwilling to believe petitioner's testimony; and, therefore, she has not sustained her burden of proof. Similarly, we are unwilling to accept her unsupported testimony that her former husband paid off the mortgage on their home. Savings Account. On June 1, 1949, petitioner opened a savings account in her own name and deposited $1,800 received from the sale of a 1949 Packard automobile which had been purchased in January of that year. Petitioner testified that the money belonged to $&843 her son who had held title to the automobile. Her son corroborated this testimony, but he did not state that he, rather than petitioner, furnished the money to purchase the automobile. In reconstructing petitioner's net income the fact that petitioner furnished the money to purchase the car is the pertinent factor, for whether the amount in question be reflected as an expense or as an increase in net worth makes no difference in the over-all result. *134 Gifts from Son. Both petitioner and her son testified that while the son was working for the L. & N. Railroad Co. from October 1943 until some time in early 1945, he gave his mother $10 per week. He also testified that he sent his mother money while in the Service, including his mustering-out pay and insurance refund of around $200. We have made allowance for these items in our findings. Living Expenses. Respondent determined that petitioner's living expenses were $2,000 per year from 1940 to 1947, inclusive, and $3,000 per year from 1948 to 1951, inclusive. Petitioner estimated that her living expenses were around $1,000 per year. Omitted from this estimate are several important items such as entertainment, transportation, the erection of a fence, and the purchase of a stove, refrigerator, and hot water heater. On the basis of petitioner's self-serving uncorroborated testimony we are unable to find that respondent's determination was erroneous. In so holding we are not unmindful of petitioner's testimony that she was supported by her husband until they separated in June 1941. Gifts from an Admirer. Petitioner contends that she received approximately $2,500 per year from *135 James L. Mulhall in most of the years involved. Mulhall testified that he gave her the amounts specified and petitioner testified that she received them. Respondent has requested that we find that Mulhall paid these amounts to petitioner, and we have so found. The principal dispute is whether the payments were gifts or compensation. Petitioner has the burden of proving they were gifts as she contends. Petitioner and Mulhall testified that they were gifts in contemplation of marriage. However, Mulhall had a wife throughout all the taxable years and there is no indication that either he or his wife ever attempted to obtain a divorce. In view of all the facts and circumstances, we do not believe petitioner has sustained her burden of showing that the payments by Mulhall were gifts. Re-examination. Petitioner complains that her liability for tax for the years 1944, 1945, 1946, and 1947 was examined in 1948, and that when she was subjected to a re-examination without written notice it was in violation of section 3631 of the Internal Revenue Code of 1939. [1] That section provides for written notice prior to a re-examination of the taxpayer's books but does not provide that any deficiency *136 resulting from such re-examination shall be void and petitioner has not demonstrated how a violation of such statute, if true, can affect the issues presented herein. Moreover, here the petitioner had no books to re-examine. Nor does it appear that she made timely objection to the later investigation. See Leslie A. Sutor, 17 T.C. 64; Philip Mangone Co. v. United States, (Ct. Cls.) 54 Fed. (2d) 168; J. S. McDonnell, 6 B.T.A. 685. Respondent determined that petitioner is liable for a 25 per cent addition to tax under section 291(a) of the Internal Revenue Code of 1939[2] for failure to file Federal income tax returns. Petitioner has not shown that her failure to file returns was due to reasonable cause and not due to willful neglect. The Commissioner's *137 determination must therefore be sustained. Murray Humphreys, 42 B.T.A. 857, 880, affd. (C.A. 7) 125 Fed. (2d) 340, certiorari denied 317 U.S. 637. Fraud. Respondent determined that at least *138 part of the deficiency in each of the taxable years was due to fraud with intent to evade tax and that petitioner is liable for a 50 per cent addition to tax under section 293(b) of the Internal Revenue Code of 1939. [3]
A charge of fraud is never to be imputed or presumed and the ordinary preponderance of evidence is not sufficient to establish the charge. Where, as here, fraud is not admitted, the burden is upon the respondent to prove it by clear and convincing evidence. Henry S. Kerbaugh, 29 B.T.A. 1014, affd. 74 Fed. (2d) 749. In our opinion respondent has not sustained his burden. As is usual in such cases, there is no direct evidence of fraud herein. In support of his contention that a part of the deficiency in tax for each of the years involved is due to fraud with intent to evade *139 tax, respondent argues that the repeated failure of petitioner to file returns and report large amounts of income, under the circumstances herein, compels the conclusion that at least a part of the deficiency for each of the years is due to fraud with intent to evade tax. We do not agree. Here the greater portion of the unreported income consisted of the payments by Mulhall. Petitioner was told by respondent's agent that such payments were not taxable. Her failure to report them can, therefore, hardly be laid to fraud with intent to evade tax thereon. As to the balance of the income which respondent, through use of the net worth method, has found petitioner received during the period involved, the failure of petitioner to overcome the presumptive correctness of the deficiency does not create a presumption of fraud. Both parties in a proceeding of this nature may fail through inadequate proof on their several issues, and thus the deficiency would be sustained but the penalty set aside, L. Schepp Co., 25 B.T.A. 419, 437. Such, we think, is the situation here. While we have upheld respondent's determination of the deficiencies herein, with certain adjustments, because *140 of the inadequacies of petitioner's proof, we nevertheless think, and so find, that respondent has not sustained the burden imposed upon him to establish, by clear and convincing evidence, that a part of the deficiencies for each of the taxable years involved was due to fraud on the part of the petitioner with intent to evade tax. In so holding we are not unmindful of the fact, stressed by respondent, that petitioner was engaged in a highly immoral and illegal occupation. While this fact might indicate she is the type of person who would not be averse to evading the tax laws, it does not prove that she deliberately failed to report income in the taxable years involved. Statute of Limitations. In her petition the petitioner pleaded that the assessment of the tax was barred by the statute of limitations. The proof shows, however, that she did not file any returns which would start the running of the statute. Section 275(a), Internal Revenue Code of 1939. Decision will be entered under Rule 50. Footnotes
1. SEC. 3631. RESTRICTIONS ON EXAMINATION OF TAXPAYERS. No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩
2. SEC. 291. FAILURE TO FILE RETURN. (a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3612(d)(1).↩
3. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d)(2).↩