J. E. Wheeler and Augusta M. Wheeler v. Commissioner. J. E. Wheeler v. Commissioner.
Wheeler v. Commissioner
Docket Nos. 51485, 51486.
United States Tax Court
T.C. Memo 1955-249; 1955 Tax Ct. Memo LEXIS 95; 14 T.C.M. (CCH) 989; T.C.M. (RIA) 55249; August 31, 1955
*95 Held, deficiencies for each of the taxable years (with some adjustments) properly determined using the net worth method. Held further, at least part of the deficiency for each of the taxable years was due to fraud with intent to evade tax and the statute of limitations has not run on any of those years. Held further, the Commissioner's alleged failure to comply with section 3631 of the Internal Revenue Code of 1939 has no bearing upon the issues presented. Lee S. Jones, Esq., Kentucky Home Life Building, Louisville, Ky., for the petitioners. John L. Carey, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income tax of petitioners for the years 1941, 1942, and 1947, deficiencies in the income tax of J. E. Wheeler for *96 the other taxable years involved, and additions to tax as follows: Additions
to Tax
Year
Deficiency
Sec. 293(b)
J. E. Wheeler
1941
$ 112.23
$ 56.13
and Augusta M.
1942
1,005.64
502.82
Wheeler
1947
1,305.24
652.62
J. E. Wheeler
1943
$1,777.94
$ 873.11
1944
202.10
101.05
1945
4,836.27
2,418.14
1946
1,726.13
863.07
1948
598.76
299.38
1949
1,554.74
777.34
1950
1,112.87
556.44
1951
386.06
193.03
The proceedings were consolidated for hearing. The issues for decision are: 1. Whether the Commissioner correctly computed the income of petitioners for the years 1941, 1942, and 1947, and the income of J. E. Wheeler for the other taxable years involved using the net worth method. 2. Whether the Commissioner properly determined that at least part of the deficiency in each of the taxable years involved was due to fraud with intent to evade tax, resulting in liability for additions to tax under section 293(b) of the Internal Revenue Code of 1939 and barring the running of the statute of limitations. 3. Whether the Commissioner's alleged failure to give written notice as is required by section 3631 of *97 the Internal Revenue Code of 1939 has any bearing upon the issues presented herein. Findings of Fact Petitioners are husband and wife and reside in Louisville, Kentucky. They were married in 1928, divorced in 1943, remarried in 1946, divorced for the second time in 1949, and remarried again in 1953. Petitioners filed joint income tax returns for the years 1941, 1942, and 1947 with the collector of internal revenue for the district of Kentucky. The petitioner J. E. Wheeler filed individual income tax returns with said collector for the years 1943, 1944, 1945, 1946, 1948, 1949, 1950, and 1951. J. E. Wheeler (hereinafter referred to as Wheeler) was born around 1904 and received an eighth grade education. During the years 1941 to 1950, inclusive, he operated a riding academy. During the years 1947 to 1951, inclusive, he also operated a farm. Throughout the taxable years involved he owned rental properties from which he received rents. He made some investments in corporate stock and he did some gambling. Augusta Wheeler (hereinafter referred to as Augusta) held various jobs from before the time of her marriage in 1928 until 1943, when she joined one of the Armed Services. She had *98 been working for the Jefferson County Road Department for eight and one-half years at a salary of around $165 per month when she left to go into the Service. In the Service she made around $75 or $90 per month. She was discharged in 1945. In 1946, 1947, and during the early 1950's she had a summer job at a resort in Maine. From 1949 to 1952 she attended Nazareth College. While attending college she received $105 per month from the Government. In 1930 Wheeler purchased certain property on the Ohio river known as Fairview Beach from J. C. Bourne for $20,000. Wheeler paid $1,000 down and gave his notes for the balance. The improvements on the property consisted of several three-room cottages, a road house, and two barns. J. E. Wheeler erected a large dwelling house and more cottages on the property. A flood in 1937 washed away the dwelling house, cottages, and barns and caved in the road house so as to cause it to be condemned. Wheeler had no insurance which reimbursed him for his loss. At that time Wheeler still owed J. C. Bourne the principal amount of $17,000. On March 1, 1937 he filed an application for a loan with the Disaster Loan Corporation, showing his net worth to be as follows: *99 ASSETS
Cash
$ 175.00
Life Insurance
50.00
Land and buildings at Fairview Beach
35,000.00
Machinery and equipment
50.00
Livestock and farm implements (cost $600)
800.00
LIABILITIES
Mortgage on real estate
$17,000.00
Net Worth
19,075.00
In another place in the application Wheeler stated that the land was worth only $8,000 and that the improvements would not be rebuilt. The application was signed by both of the petitioners. On April 15, 1937 petitioners entered into an agreement with J. C. Bourne whereby the property at Fairview Beach was reconveyed to J. C. Bourne in exchange for the cancellation of Wheeler's indebtedness. The agreement was recorded and bears no documentary stamps. Petitioners did not report the receipt of any taxable income for the years 1937 to 1940, inclusive. Augusta kept Wheeler's books and records until she went into the Service in 1943. Thereafter an accountant kept the books on the basis of information which was furnished him by Wheeler. Only a part of the receipts of the riding academy were entered on the daily sheets at the stable. The book entries and, in turn, the Federal income tax returns, were based upon these *100 daily sheets. The books and records of Wheeler did not clearly or accurately reflect his income. During World War II the riding academy was very profitable. The net income reported by petitioners or by Wheeler individually and the a7ounts which respondent determined that they or he received are as follows: Received (per
Year
Reported
Respondent)
1941
$ 52.31
$ 2,742.32
1942
1,411.53
6,105.24
1943
2,840.75
8,175.75
1944
1,056.81
2,036.44
1945
327.37
14,812.53
1946
1,611.56
8,733.19
1947
124.30
7,046.46
1948
2,798.06
5,022.03
1949
265.77
8,031.60
1950
952.42
6,399.61
1951
1,708.31
3,564.33
Respondent computed the above amounts using the increase in net worth and expenditures method. He determined that petitioners' assets on December 31, 1940 consisted of $30.40 in cash together with $8,650 in real estate, that their liabilities amounted to $5,824.85, and that they had a depreciation reserve of $248.75. He also determined that petitioners' living expenses were $2,000 in 1941, 1942, and 1947, and that Wheeler's living expenses were $1,500 in each of the other taxable years involved. At the beginning of 1941 petitioners had *101 livestock and equipment costing not less than $1,500 and having a useful life of ten years. Augusta, upon her remarriage to Wheeler in 1946, returned the $3,000 in alimony she had received at the time of their divorce in 1943. Therefore, net income as determined by respondent should be reduced by $150 in each of the years 1941 to 1950, inclusive, and by an additional $3,000 in 1946. At least part of the deficiency in each of the taxable years involved was due to fraud with intent to evade tax. Petitioners' books and records were examined in 1941 and again in 1947. When the revenue agent was making the investigation which resulted in the determination of the deficiencies herein in dispute, Wheeler told the revenue agent that in 1937 he had given all of his records up to that time to another revenue agent named Cook. When asked for these records, Cook said that he didn't have them. Opinion The asserted deficiencies were determined by respondent on the basis of petitioners' increase in net worth and personal expenditures. Petitioners challenge the propriety of using this method to determine their net income. They contend that their method of accounting clearly reflects their net *102 income and that under those circumstances respondent is precluded by section 41 of the Internal Revenue Code of 1939 from resorting to any other method. However, as the net worth method is not a method of accounting, its use is not resorting to another accounting method. Section 41 does not bar the use of the net worth method as a guide for determining the amount of income actually received where the net worth computation reveals a substantial gap between reported income and the increase in net worth and expenditures or where the books are otherwise shown to have been inaccurately maintained. Estate of George L. Cury, 23 T.C. 305. Here receipts from the riding academy were shown to have been inaccurately recorded and the petitioners' net worth increase and expenditures greatly exceeded their reported income. Petitioners have conceded the accuracy of most of the figures in respondent's net worth computation. Petitioners contend, however, that they had $17,000 in cash in a safety deposit box and $10,000 in livestock and equipment at the beginning of 1941. They also contend that when Augusta remarried Wheeler in 1946 she still had the $3,000 which she had received as alimony *103 in 1943, as well as money she had saved while in the Service. They further contend that their living expenses did not exceed $1,000 per year. Most of petitioners' contentions find their sole support in the uncorroborated, selfserving testimony of Wheeler. Wheeler admitted on cross examination that he gave false testimony and induced another to give false testimony in one of his divorce proceedings, and a prior sworn statement which he made appears to contradict his testimony in the instant proceeding. Therefore we are able to place little credence in his testimony, even when uncontradicted. Cf. M. Rea Gano, 19 B.T.A. 518, 526; Frank Imburgia, 22 T.C. 1002, 1018. Wheeler testified that at the end of 1940 he had around $17,000 in cash in a safety deposit box and around $400 or $500 in cash at home. To support this testimony petitioners introduced in evidence a letter of very questionable competency and validity which states that Wheeler had between $9,000 and $12,000 in cash in October 1943. However, even if the letter correctly states the facts, it does not establish that Wheeler had the cash at the end of 1940. Wheeler stated that he acquired $7,700 *104 of the $17,000 when he reconveyed the property at Fairview Beach to J. C. Bourne in 1937. This latter statement is contradicted both by the words of the agreement, which recited no consideration for the transfer except the cancellation of Wheeler's indebtedness, and by the fact that no documentary stamps are attached to the agreement, even though it was recorded. There is no corroboration for Wheeler's statement and no explanation is given for the failure to call J. C. Bourne as a witness. Under the circumstances we are unwilling to believe Wheeler's testimony. Wheeler also testified that he acquired the balance of the $17,000, or around $10,000, from the sale of livestock and equipment prior to 1941, and that he had on hand livestock and equipment costing between $8,000 and $10,000 at the beginning of 1941. On March 1, 1937 Wheeler made a sworn statement that he had $175 in cash, had livestock and farm implements which cost $600 and were worth $800, and had other equipment worth $50. During the years 1937 to 1940, inclusive, petitioners reported no taxable income. In order to explain the apparent discrepancy between Wheeler's testimony herein and his statement of March 1, 1937, petitioners *105 argue on brief that not all of the livestock was included on the statement of March 1, 1937 as the livestock was purchased by, and was the property of Augusta. We find little merit in this argument as Augusta testified that all of their assets were owned jointly. Also, Wheeler used the singular possessive in referring to the livestock, and both petitioners signed the statement. Therefore, we do not believe Wheeler's testimony that he had in 1937, or acquired prior to 1941, nearly $20,000 worth of livestock and equipment. However, we have found that petitioners had livestock and equipment at their riding academy or elsewhere at the beginning of 1941 costing $1,500 which should be depreciated over a ten-year period. We have found as a fact that when Augusta remarried Wheeler in 1946 she returned the $3,000 that she had received as alimony in 1943. Petitioners argue that she had other savings at that time; but, as there is no testimony or other evidence to that effect, we can make no allowance therefor. Petitioners attack the validity of respondent's determination that they jointly expended $2,000 for living expenses in each of the years 1941, 1942, and 1947, and that Wheeler expended *106 $1,500 for living expenses in each of the other taxable years involved. In order to establish that the living expenses were less than the amounts determined by respondent, petitioners rely solely upon the uncorroborated testimony of Wheeler, which we are unwilling to accept as true. In our opinion the determined amounts represent reasonable and conservative estimates, especially in view of the fact that Wheeler owned and operated an automobile and held a box at Churchill Downs race track throughout the taxable years involved. We have found that part of the deficiency for each of the taxable years was due to fraud with intent to evade tax. We think our finding is supported by clear and convincing evidence. Augusta testified that only part of the receipts from the riding academy were recorded. As the income tax returns were prepared from those records, only a part of the receipts were reported. Furthermore, the net worth computation shows a substantial and consistent understatement of income. Also, Wheeler admitted that he gave false testimony and induced another to give false testimony with respect to the ownership of an automobile in one of his divorce proceedings. This indicates *107 a willingness to make false statements under oath where to do so appears financially advantageous. The above and other evidence of record demonstrates clearly and convincingly that part of the deficiency in each of the taxable years was due to fraud. Accordingly, the statute of limitations has not run on any of the years involved, and respondent properly determined liability for additions to tax under section 293(b) of the Internal Revenue Code of 1939. The remaining issue involves petitioners' complaint that respondent did not give them written notice as is required by section 3631 of the Internal Revenue Code of 1939[1] prior to re-examing their books and records. While that section does provide for written notice prior to re-examination of a taxpayer's books, it does not provide that any deficiency resulting from such re-examination without prior notice shall be void. Petitioners have not suggested how the violation of that section, if true, can affect the issues presented herein. Furthermore, there was no re-examination of the petitioners' books as Wheeler claimed not to have any books for the years which had previously been examined. Also, the only evidence that no notice was *108 sent is the uncorroborated and questionable testimony of Wheeler, and in addition, there is no evidence that timely objection was made to the later investigation. See Leslie A. Sutor, 17 T.C. 64; Philip Mangone Co. v. United States (Ct. Cls.) 54 Fed. (2d) 168; J. S. McDonnell, 6 B.T.A. 685. Decisions will be entered under Rule 50. Footnotes
1. SEC. 3631. RESTRICTIONS ON EXAMINATION OF TAXPAYERS. No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.↩