**Louis P. LUTFY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14630.**

United States Court of Appeals
Ninth Circuit.

March 6, 1956.

9. General Overriding Regulation 14 Amendment 27 (1952).

Parker & Muecke, Darrell R. Parker, Phoenix, Ariz., for appellant.

Jack D. H. Hays, U. S. Atty., Phoenix, Ariz., Robert O. Roylston, Mary Anne Reimann, Asst. U. S. Attys., Tucson, Ariz., for appellee.

Before DENMAN, Chief Judge, and POPE and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

Appellant was convicted on all five counts of an indictment charging income tax evasion under 26 U.S.C.A. § 145(b), covering income taxes for himself or his wife, or for both, for the years 1946, 1947 and 1948. This appeal follows those convictions.

Appellant is a practicing physician. Count I alleges that on March 15, 1947, he willfully and knowingly attempted to defeat a large part of the income tax owing by him to the United States for the calendar year of 1946 by filing with the Collector a false and fraudulent income tax return wherein he stated that his net income for that year, computed on the community property basis, was $2,309.91 and that the amount of tax owing thereon was $248.88; whereas, as he well knew, his net income for said calendar year, computed on the community property basis, was $10,168.11, and that he owed a tax thereon in the sum of $2,239.44.

Count II alleges that on the same date, the appellant, who during the calendar year of 1946, was married to Bertha A. Lutfy, willfully and knowingly attempted to defeat and evade a large part of the income tax owing by her to the United States for the calendar year 1946, by filing with the Collector a false and fraudulent return for her, stating therein that her net income for that calendar year, computed on the community property basis, was $2,309.91, and that the amount of tax owing thereon was $153.88; whereas,

as he well knew, the said net income, computed on the community property basis, was $10,168.11, and that the income tax due thereon was $2,077.80.

Count III alleges that appellant, on March 1, 1948, filed a false and fraudulent return for himself, wherein he stated his net income, computed on the community property basis, was $4,177.19, and the tax due was $626.03; whereas, as he well knew, his net income for that calendar year was $13,293.16, and the tax due was $3,349.76.

Count IV alleges that appellant, on March 1, 1948, filed a false and fraudulent return for his wife, wherein he stated that her net income, computed on the community property basis, was $4,177.18 and the tax due was $521.53; whereas, as he well knew, her net income for that calendar year was $13,293.16 and the tax due was $2,931.53.

Count V alleges that appellant on February 8, 1949, willfully and knowingly attempted to defeat and evade a large part of the income tax due by him and his wife by filing a false and fraudulent joint return for himself and wife for the calendar year 1948, stating their net income for that year to be $18,453.62, and the tax due thereon to be $3,265.36, whereas he then and there well knew that the net income for that year was $32,790.65 and that the tax owing was $8,198.22.

The appellee relied largely upon the net worth method to prove its case.

Appellant specifies several errors. Most are interrelated.

The first relates to the sufficiency of the evidence to meet the standards of proof to support conviction of income tax evasion based on the net worth theory.

December 31, 1945, was used by the appellee as the starting point in compiling the net worth statement. It embraced bank deposits and cash on hand.

The appellee's evidence showed that appellant on or about November 24, 1944, converted to cash Government bonds in the amount of $14,195.12, and that in 1944 his mother repaid to him $4,400 which he had previously lent her. It is claimed no attempt was made to ascertain what happened to these two amounts and therefore they furnished no basis for corroborating appellant's statement concerning cash on hand. But the inference is clear that these sums were a part of the $58,337.20 established by the appellee as the net worth at the starting period.

The net worth statement showed appellant purchased 6 parcels of real estate in 1944 and 1945, and that the cash from the bonds was deposited in appellant's bank account in 1944. It could, therefore, be concluded that the $18,000 was not on hand at the starting point.

■ It is asserted that the introduction of tax returns for prior years was prejudicially erroneous. This procedure has been approved as showing the financial history of the taxpayer.[1] The returns showed that except for 1935, 1939 and 1941, when $82.56, $7.33 and $44.57, respectively, were paid, no tax was paid from 1934 to 1943.

■ Appellant asserts that a regular set of books were kept by him and that consequently a case was not presented which would permit resort to the net worth theory. No false entries were found. But there was evidence that the records were inadequate and did not reflect the true income.[2] We conclude that the United States was warranted in resorting to the net worth method and that the trial court properly received evidence in support thereof.

■ Mention is made by appellant of $3,200 received on a loan, which it is claimed is not reflected in the Government's calculations. But he had stated

1. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 127; Friedberg v. United States, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 140; Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 143.

2. R. Dale Moser, appellant's accountant, testified "I would say there were errors in the bookkeeping"; the books "did not reflect the true income."

that he had received no loans other than from an insurance company and the Government agent could find no evidence of such a loan. There was clearly a conflict in the evidence regarding this transaction and the jury could, as it undoubtedly did, resolve the conflict against appellant.

Mrs. Lutfy's brother testified that substantial gifts were made from time to time to her by their mother. No gift tax returns had been filed with the Collector and the jury was not bound to decide in conformity with this testimony.

Complaint is made that the investigators for the appellee ignored assets in the form of life insurance, which it is claimed had cash values, the principal sum of which policies aggregated approximately $45,000. However, there is no evidence that appellant obtained loans against these policies or that they were surrendered for cash during the period involved in this prosecution. These policies were therefore immaterial, except insofar as this evidence was corroborative of the net worth computations.

A "Motion for Bill of Particulars" was filed by the appellant on April 20, 1953. On April 24, 1953, the appellee filed a bill of particulars. On May 4, 1953, when the appellant's motion came up for hearing, the appellant announced that the requested bill of particulars had been supplied. On December 15, 1953, the appellee filed an amended bill of particulars, and on December 23, 1953, the Court ordered that the proposed amended bill of particulars be filed as "the Bill of Particulars". On January 25, 1954, the appellant filed a motion for "Further Particulars", to which the appellee replied, on February 8, 1954, by furnishing such "Further Particulars". On the same day, the District Court ordered that the appellant's "Motion for Bill of Particulars" (sic) be "stricken from the calendar subject to reinstatement upon three days' notice to the United States Attorney."

It is asserted that nowhere in these bills was claim made that the appellant willfully took improper deductions or improperly computed depreciation reserves, and that evidence to that end, introduced over objection, and the denial of motions to strike the same constitute reversible errors. That the appellee gave notice in the bills of its intention to show tax evasion through improper deductions is stated in paragraph 1 of the appellee's "Reply to Defendant's Motion for Further Particulars" in this language: "All non-deductible personal expenses taken as business deductions have been disallowed". In its bill, notice was sufficiently given by the appellee that the depreciation would be considered in arriving at the net worth during the period in question. The substantial rights of the appellant were not prejudiced by permitting this evidence.

Appellant was fairly and impartially tried. The Court's instructions to the jury were comprehensive and correct. We find no error affecting the substantial rights of appellant. The judgment must therefore be, and it is

Affirmed.