**UNITED STATES of America, Plaintiff-Respondent,**

v.

**Raymond A. O'CONNOR, Defendant-Appellant.**

**No. 292, Docket 23763.**

United States Court of Appeals Second Circuit.

Argued March 12, 1956.

Decided Oct. 1, 1956.

John F. X. Finn, New York City (Joseph Lorenz, John E. McAniff, William R. White, New York City, of counsel), for defendant-appellant.

John O. Henderson, U. S. Atty., W. D. New York, Buffalo, N. Y. (Alexander C. Cordes, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for plaintiff-respondent.

Before FRANK, LUMBARD and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Defendant, Raymond A. O'Connor, appeals from a judgment entered upon the verdict of a jury, finding him guilty on all four counts of an indictment charging him with wilfully attempting to evade and defeat his income taxes for the years 1946, 1947, 1948, and 1949, by filing for each of those years an income tax return understating the amount of his taxable income. Judge Knight imposed a sentence of five years upon each of the four counts (to be served concurrently), and a fine of $10,000 for each of the counts for 1946 and 1947. Defendant was released on bail pending this appeal.

The alleged errors raised by defendant are as follows: (1) the failure of the Government to prove the essential elements of its case; (2) the inaccuracy of the Government's net worth statements and computations; (3) the inadmissibility of certain evidence; (4) the correctness and sufficiency of the charge; and (5) a group of miscellaneous and unclassified errors.

Because of the complexity of this particular case and the confusing manner in which it was conducted, defendant's most telling point is that the trial court's charge to the jury was unclear, confusing, and incomplete. The role of the court's charge in tax evasion cases increases in significance in direct proportion to the mounting complexity of the issues presented.

Because of the size and range of defendant's fiscal activities, the Government's case of necessity required extensive factual data. At the time of the trial, the defendant was fifty-five years of age, married, and the father of four children, among whom he had distributed many of his assets. He was a certified public accountant, duly admitted to the practice of his profession by the Regents of the University of the State of New York. In addition, the defendant had varied business interests. He conducted the largest accounting practice in Niagara County, New York. He also managed two farms and a canning plant; he was treasurer of a cold storage business; he dealt with at least thirteen parcels of real estate; and he managed a large investment portfolio.

The trial covered a period of fifty days. The Government introduced 435 complicated and frequently confusing exhibits. In addition, the defendant introduced 145 exhibits. The staggering task of properly analyzing these exhibits was left to the jury without adequate instruction.

The Government conceded that a complicated case was presented, as indicated by its chief witness who testified: "There are thousands of entries, thousands of adjustments, thousands of items that we have had to handle." To pull together all the items of evidence the Government relied primarily upon the testimony of three revenue agents, all of whom con-

fessed to only a modest background in accounting and an unfamiliarity with net worth tax cases. The presentation of evidence revealed little awareness of the complexities of proof required for a net worth prosecution. The witnesses were not properly prepared to present a logical flow of testimony.

The record was devoid of any computation offered by the Government to prove the specific amount of tax due from the defendant in his individual capacity. Government Exhibit 423 was in fact a combined statement of the alleged net worth of the defendant and his wife, and it included assets of each of their four children, assets belonging to a co-partnership of which the defendant was a member, and at least one asset of a corporation not owned by the defendant.

One of the basic elements of the Government's case rested upon the claim that the funds and assets of the defendant's wife, Bertha O'Connor, and the defendant's four children were in reality assets belonging to the defendant. This contention was not made clear in the court's charge to the jury. When the United States Attorney originally offered evidence as to bank accounts of the defendant's wife, he did not state the Government's theory that these were in reality assets of the defendant. Instead, he said: "I am offering this in evidence to show the general plan of having these assets moved around, and if I do not connect it up, of course, it will be stricken eventually." Similarly, when bank accounts of the defendant's children were offered, the court made no explanation of the rules either as to admissibility or relevancy. The failure to illuminate the jury as to the theory upon which evidence was admitted persisted throughout the trial, and on occasion the court contributed to the confusion. At one point the Government offered in evidence checks of the Chisholm Ryder Co., Inc., payable to the defendant's partnership, R. A. O'Connor & Co. Upon defense counsel's objection that this was improper under the net worth theory without some claim that the partnership return was errone-

ous, the court overruled the objection, stating: "I don't see any difficulty about it. Part of the income of the company. It may be assets and liabilities on the net *income* theory." (Emphasis added.) This comment did not clarify the issues and could only have confused the jury.

Considerable testimony was introduced as to loans by the defendant, some as far back as 1929 and extending up to 1941, and others paid off in January, 1942. There is no statement by the court as to why these were admissible or how they bore on the issues. Evidence was also permitted concerning loans of others which were endorsed by the defendant, again without any explanation.

The defendant testified in his own behalf and listed what he claimed were 104 errors in the Government's computations. His testimony covers several days of the record and lists item after item of either income or expense which he contends was not properly set up in the Government's exhibits. The defendant detailed many items and gave his explanation as to how they should be treated. Nowhere in the succeeding pages of the record is the jury given any explanation as to the significance of the defendant's contentions and what effect these items would have on the Government's computations.

When the defendant sought to examine one of the government witnesses, Julian O'Connor, the defendant's brother, to explain what the net worth theory encompassed, the trial judge refused to permit the examination, stating: "The Court will instruct the jury very fully on what the net worth theory is." This, however, the court neglected to do.

In addition to the confusion of defendant's income with that of others not on trial, there were issues as to which items were to be included in defendant's assets as of the opening dates of the tax periods in question.

Since the ascertainment of the defendant's opening net worth is crucial to an effective net worth prosecution, it was incumbent upon counsel and court to instruct the jury as to what evidence was being offered to establish that net worth,

its purported size and whether exact or closely approximated, and its significance in the inferential process by which defendant was sought to be convicted. But the trial judge never so instructed the jury nor did he supply the missing clarification at the time of the admission of the evidence. On at least one occasion, for example, the judge overruled an objection with the statement, "Whatever ground you base it on, I overrule it."

The trial court failed to analyze for the jury the important significance of the items that the defendant claimed were omitted from his opening net worth. For example, the defendant claimed that he had $59,054.59 in undeposited cash and checks on December 31, 1945. He further testified that in 1941 he had paid $60,500 for the stock of the Burt Cold Storage Company. The Government gave him no credit for either of these items in its opening statement. Obviously, if the Government had omitted almost $120,000 from its opening statement, the computation for each of the four succeeding years would have to be drastically revised. Similarly, when the defendant received $60,000 during the prosecution years from the Burt Cold Storage Company, the Government charged it all up to current income as a capital gain. The defendant argued that this was merely a repayment of his original investment. Whether or not it was income had a very substantial effect on determining whether there was any tax evasion in the year the $60,000 was received. This is the type of explanation that the jury needed, because, as the United States Attorney admitted several times during the trial, a very complicated financial picture was involved.

In the unusually complex circumstances of this case, the clarity, accuracy, and detail of the trial judge's charge to the jury became essential for the fair and orderly conduct of the trial. To be sure, the Government introduced a great deal of non-accounting evidence from which the jury could reasonably infer a wilful evasion of taxes by the defendant. There was testimony to the effect that the defendant had unsuccessfully attempted to induce one accountant to testify to his version of his net worth, but the accountant had refused to so testify because he had no faith in that version. Other evidence was adduced tending to show that defendant had destroyed or concealed his financial records, thereby necessitating a five-month investigation by the Government's agents in order to amass the required data. Defendant's own story as to the cash hoard in his attic tested the limits of credibility. Finally, a bank official testified that defendant had tried to induce him to change bank records which would indicate defendant's income.

But regardless of the weight of evidence tending to show the guilt of the accused,[1] in order to justify a conviction of tax evasion obtained through resort to the net worth method, it is imperative that the jury comprehend the complex theory involved and that it appreciate the relevance of the evidence introduced in the application of that theory. The trial circumstances here considered dramatically underscore that need and emphasize the weight that must be attached, in this case, to the court's charge to the jury. Indeed, in cases such as this, it is highly desirable that some explanation of the issues involved and the relevance of the evidence introduced be given during a lengthy trial, as well as

---

[1] "From presuming too often all errors to be 'prejudicial,' the judicial pendulum need not swing to presuming all errors to be 'harmless' if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty. In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of

an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be." Bollenbach v. United States, 1946, 326 U.S. 607, 615, 66 S.Ct. 402, 406, 90 L.Ed. 350. See also Kotteakos v. United States, 1946, 328 U.S. 750, 763–766, 66 S.Ct. 1239, 90 L. Ed. 1557.

in the charge at the conclusion of the evidence.

■ The Supreme Court has held that the net worth method of prosecution for tax evasion is a permissible one, but that because of the dangers inherent in the method it must be applied with the greatest caution. "Trial courts should approach these cases in the full realization that the taxpayer may be ensnared in a system which, though difficult for the prosecution to utilize, is equally hard for the defendant to refute. *Charges should be especially clear, including, in addition to the formal instructions, a summary of the nature of the net worth method, the assumptions on which it rests, and the inferences available both for and against the accused.* Appellate courts should review the cases, bearing constantly in mind the difficulties that arise when circumstantial evidence as to guilt is the chief weapon of a method that is itself only an approximation." Holland v. United States, 1954, 348 U.S. 121, 129, 75 S.Ct. 127, 132, 99 L.Ed. 150 (Emphasis added.) We interpret this statement as at the very least requiring that the charge to the jury, in a case of such complexity as this, set forth the relationship of the various schedules and computations introduced into evidence to the applicable claims advanced for them by the Government and the defense, and the pertinence of these claims in supporting the logical inferences each party relies upon. See United States v. Altruda, 2 Cir., 1955, 224 F.2d 935, 943.

In this case two preliminary questions must be disposed of before turning to the merits of the charge: (1) whether the standards announced by the Supreme Court in Holland and its companion cases, Friedberg v. United States, 1954, 348 U.S. 142, 75 S.Ct. 138, 99 L.Ed. 188; United States v. Calderon, 1954, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202; and Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192, are applicable to this case, which was tried prior to those decisions; and (2) whether defendant is entitled to raise the merits of the charge on appeal despite his alleged failure to make specific and timely objections to the court's charge.

■ In United States v. Bardin, 7 Cir., 1955, 224 F.2d 255, the Court of Appeals compared the charge in that case with the charge affirmed by the Supreme Court in Holland, and concluded that, since neither charge met the standard enunciated by the Supreme Court in the Holland case, that standard must have been intended for prospective—and not retroactive—application. A vigorous dissent questioned the majority's view that the Holland standard was intended merely as a guide for future trials. We think that we are required to apply the latest rules of law formulated by the Supreme Court to all cases coming before us in which those rules are relevant, irrespective of the relative dates of trial. Indeed, we have already done so in one case tried before the Holland decision, United States v. Costello, 2 Cir., 1955, 221 F.2d 668, affirmed 350 U.S. 359, 76 S.Ct. 406. And we can only interpret the Supreme Court's action in granting certiorari in nine net worth cases, vacating the judgments, and remanding the cases to the respective Courts of Appeals for reconsideration in the light of the Supreme Court's net worth decisions, as a definite command that the new formulations be applied to all pending net worth cases. Mitchell v. United States, and other cases, 1954, 348 U.S. 905, 75 S.Ct. 311, 99 L.Ed. 710.

■■ The Government argues that we should not consider the charge on its merits because defendant did not request specific instructions and did not object to the instructions given. However, defendant did make a general objection to the trial court's charge "as to the net worth method of computation," and specifically requested the court to charge that the establishment of an accurate starting net worth was vital to the Government's case. This request was denied. Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. provides that "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury re-

tires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Thus the general rule is that a defendant cannot raise an objection on appeal for the first time if he has failed to object specifically to a charge or failed to request a charge omitted by the trial court.[2] But in criminal cases federal appellate courts have sometimes noticed errors to which no proper objection has been taken "if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings."[3] The Federal Rules of Criminal Procedure have not abolished this inherent power.[4] We think that in this case we should consider the charge on the merits, both because the alleged error seriously affected the substantial rights of defendant and because, under the circumstances, defendant's general objections and requests were sufficient to preserve the point.

■ It is our belief that the charge failed to include "a summary of the nature of the net worth method, the assumptions on which it rests, and the inferences available both for and against the accused," and that in the setting of this case such a failure constituted reversible error. There is serious doubt that the jury ever understood the issues of the case or the bearing that the complex evidence might have on those issues. The trial court's only instructions on the net worth method are contained in the four paragraphs, not delivered consecutively, that are quoted in the margin.[5]

2. United States v. Tramaglino, 2 Cir., 1952, 197 F.2d 928, certiorari denied 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670; United States v. Sherman, 2 Cir., 1948, 171 F.2d 619; United States v. McCarthy, 2 Cir., 1948, 170 F.2d 267.

3. United States v. Atkinson, 1936, 297 U.S. 157, 56 S.Ct. 391, 392, 80 L.Ed. 555; Johnson v. United States, 1943, 318 U.S. 189, 200, 63 S.Ct. 549, 87 L.Ed. 704; Screws v. United States, 1945, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495.

4. See Rule 52(b); Obery v. United States, 1954, 95 U.S.App.D.C. 28, 217 F.2d 860; Fischer v. United States, 10 Cir., 1954, 212 F.2d 441, 444; United States v. Marachowsky, 7 Cir., 1953, 201 F.2d 5, 18; Tatum v. United States, 1951, 88 U.S.App.D.C. 386, 190 F.2d 612, 614; United States v. Monroe, 2 Cir., 1947, 164 F.2d 471, 474; United States v. Rappy, 2 Cir., 1946, 157 F.2d 964, 967; Herzog v. United States, 9 Cir., 1956, 235 F.2d 664, 666–667. And even in civil cases, Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which is similar in content to Rule 30 of the Criminal Procedure Rules, is uniformly interpreted to permit appellate review of fundamental errors which cause substantial prejudice or affect substantial rights. Hormel v. Helvering, 1941, 312 U.S. 552, 556–557, 61 S.Ct. 719, 85 L.Ed. 1037; Sibbach v. Wilson & Co., 1941, 312 U.S. 1, 16, 655, 61 S.Ct. 422, 85 L.Ed. 479; Moore v. Waring, 2 Cir., 1952, 200 F.2d 491; Finn v. Wood, 2 Cir., 1950, 178 F.2d 583; Dowell, Inc., v. Jowers, 5 Cir., 1948, 166 F.2d 214, 2 A.L.R.2d 442; Sho-

kuwan Shimabukuro v. Higeyoshi Nagayama, 1944, 78 U.S.App.D.C. 271, 140 F.2d 13. For obvious reasons the Federal Rules of Criminal Procedure should be given, if anything, a more liberal interpretation in this regard.

5. "There are different methods by which liability for the payment of an additional tax may be determined. The method adopted by the Government in this case, and authorized under certain conditions by law, is what is called the net worth method. The use of this method is authorized when the bookkeeping methods of an individual do not clearly reflect his income. * * *

"* * * The net worth is determined as of a certain date. The determination is made to a later date. The difference in amounts between the two dates would be the net income gain for the period. This method has been utilized here as to each of the four years in question; from the last of 1945 to the last of '46 and the last of '46 to the last of '47 from the last of '47 to the last of '48 and the last of '48 to the last of '49. * * *

"* * * Government's Exhibit 423 in evidence purports to show the total net assets of defendant and Mrs. O'Connor as of [stating dates and amounts in 1945, 1946, 1947, 1948, and 1949]. You will see the figures as shown in the column on Exhibit 423. I may have misstated one of the amounts as to one of these dates, but you will see that on the exhibit. The increase of the gross

Taken singly or viewed as a whole, they were inadequate to explain to the jury the net worth method and its limitations. They contained neither an understandable summary of the net worth method as a whole [6] nor an explanation of how proof of wilful tax evasion is properly inferred from proof that the cost of assets acquired during the indictment period and the actual amount of expenditures during that period exceeded reported income. Were the error of less importance, we would affirm the conviction, but this charge was so grossly inadequate that we have no alternative. Kotteakos v. United States, 1946, 328 U.S. 750, 763–766, 66 S.Ct. 1239, 90 L.Ed. 1557. Such must be our decision where, as here, the evidence adduced and the issues involved were extremely complex and where no indication is given that the jury received the necessary guidance from counsel or the court at any other point in the trial. Consequently, the judgment below must be reversed, and the case remanded for a new trial.

Because we are remanding the case for a new trial, we think it advisable to dispose now of questions raised on this appeal that may arise during the course of a new trial.

### 1. *The Charge to the Jury.*

■ We have already indicated to some extent what we think should have been contained in the charge in this case. But we think it appropriate to discuss our views at greater length. First of all, the jury—either in the charge or during the trial—should have been given an explanation of the net worth method as a whole. The mere repetition of the accounting formula involved (an increase in net worth plus non-deductible expenditures, minus non-taxable receipts, equals taxable income) is helpful, but in addition the jury should have been given a comprehension of the underlying mechanism: the inferential proof of wilful tax evasion by proof that the cost of assets acquired during the indictment period and the actual amount of expenditures during that period exceeded reported income.[7] Once this is done, the accounting statements and computations will at least make some sense to an intelligent

---

each year is shown. To this net increase is added personal disbursements, and the total of the gifts claimed to be taxable. From the total there is a deduction of the income tax deduction of long-term capital gain, allowable annual deduction of personal disbursements and the net income as shown in defendant's return for 1946, but the addition of the amount as claimed in the returns. The net income subject to tax is shown on Exhibit 423 as [stating the figures for 1946, 1947, 1948, and 1949]. * * * * * * * * *

"* * * As to this net income tax method as employed by the Government, you will see from the exhibit introduced into evidence by the defendant that the amount of gross for the year 1945 is much larger than the gross as claimed by the Government. Now the effect of that is under this method of operation that the larger the amount of net worth is at the end of one year the less it would be at the following year. You can see how that would be so. * * *"

**6.** Justice Clark succinctly summarized the net worth method in Holland v. United States, 1954, 348 U.S. 121, at page 125,

75 S.Ct. 127, at page 130, 99 L.Ed. 150. Judge Learned Hand has provided us with a similarly lucid description in United States v. Costello, 2 Cir., 1955, 221 F.2d 668, at page 670. The use of the term "net worth" to describe the method used in these cases is a possible source of misunderstanding since it connotes "value." Actually, this method of prosecution for tax evasion is not concerned with value, but only with actual costs and expenditures. "[T]he statement of 'net worth' which is used by the Government is not altogether a net worth statement in an accounting sense, but rather a statement of visible assets (at cost) and liabilities." Mills, Net Worth Approach in Determining Income, 41 Va. L.Rev. 927, 940 (1955); also see Hill, Defense of a Criminal Net Worth Tax Case in Light of Recent Supreme Court Decisions, 41 Corn.L.Q. 106, 108 (1955).

**7.** The inference relied on in a net worth prosecution, simply stated, is that the unexplained difference between a defendant's net worth at the beginning of the tax year and at the end, plus his non-deductible expenditures, less the total of his reported net income and non-taxable resources, is unreported taxable net in-

jury. The trial court should caution the jury, however, as to the use it may make of the statements, figures, and tables, and, in addition, explain the two major inferences which the jury *must* draw in order to convict.

 . The first inference, *i. e.*, that the defendant's expenditures and increase in net worth during the indictment years are attributable to some *current*, rather than past, source of income, can arise only if the jury believes that the Government has established the opening and closing net worths with "reasonable certainty." Holland v. United States, supra, 348 U.S. at page 132, 75 S.Ct. at page 133. Invariably, as in the case here, the defendant will contend that the Government has omitted substantial items from the opening net worth, and hence that the inference cannot justifiably be drawn that his expenditures and increase in net worth during the indictment years come from a *current* income source. The nature of this defense and its factual elements should be explained to the jury, either in the charge or at some other appropriate point in the trial.[8] The second major inference involved in the net worth method, *i. e.*, that the current source of income is *an unreported source of tax-able income,* cannot arise unless the Government has established to the jury's satisfaction the non-existence or improbability of the receipt by the defendant during the indictment years of non-taxable funds, such as loans, gifts, inheritances, etc. In this connection, the trial court should discuss the proof of a "likely source," and explain the claims advanced by the defendant of various non-taxable resources and the attempted negation of these claims by the Government.[9] Only if the jury finds that the defendant did not have non-taxable resources during the indictment years can it draw the inference that the defendant's expenditures and increase in net worth in excess of reported income constitute *taxable* income. Finally, the trial court must appropriately charge the jury on the issue of wilfulness, and, in addition, give the usual formal instructions on burden of proof, reasonable doubt, and the like. We think that instructions of this type, in a case such as this, should involve summarization of the more important disputed questions of fact.

### 2. *Alleged Accounting Errors.*

Defendant contends that the Government made numerous accounting errors which resulted in tremendous understate-

---

come. The Government's proof that the inference is warranted, and the defendant's attack upon it, is usually divided into two phases: (1) whether the Government has accurately established the total of non-deductible expenditures and increase in net worth during the indictment years; and (2) whether the Government has negated possible non-taxable receipts during the indictment years suggested by the defendant.

8. A criminal defendant is entitled to have instructions presented relating to any theory of defense for which there is any foundation in the evidence, no matter how weak or incredible that evidence may be. United States v. Indian Trailer Corp., 7 Cir., 1955, 226 F.2d 595, 598; Tatum v. United States, 1951, 88 U.S. App.D.C. 386, 190 F.2d 612, 617.

9. See Holland v. United States, 1954, 348 U.S. 121, 135–139, 75 S.Ct. 127; United States v. Costello, 2 Cir., 1955, 221 F.2d 668, 671–672, affirmed 350 U.S. 359, 76 S.Ct. 406. We need not here explore the extent to which the Government is required to explore the leads suggested by the circumstances or supplied by the defendant in order to establish a *prima facie* case. See United States v. Fenwick, 7 Cir., 1949, 177 F. 2d 488; Bryan v. United States, 5 Cir., 1949, 175 F.2d 223, affirmed on other grounds 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; Dupree v. United States, 5 Cir., 1955, 218 F.2d 781. Other cases hold that proof of a "likely source" of unreported taxable income is sufficient when combined with persuasive proof of the defendant's financial circumstances which indicates that the existence of the asserted non-taxable resources is unlikely. Campodonico v. United States, 9 Cir., 1955, 222 F.2d 310; Watts v. United States, 10 Cir., 1955, 220 F.2d 483; United States v. Caserta, 3 Cir., 1952, 199 F.2d 905, 907; Kasper v. United States, 9 Cir., 1955, 225 F.2d 275; Bell v. United States, 4 Cir., 1950, 185 F.2d 302; Brodella v. United States, 6 Cir., 1950, 184 F.2d 823.

ment of opening net worth and overstatement of increase in net worth. Examination of these alleged "errors" reveals that the Government omitted them from its computation either because it could find no trace of their existence or because it concluded that they had a different effect than that claimed by defendant. Most of them were vigorously disputed questions of fact which were properly left to the jury. Insofar as genuine accounting errors, mistakes of transcription, and mathematical mistakes are present in the charts utilized by the parties, the trial judge will be in a much better position to pass on them as they arise during a retrial than we are at this time.

### 3. *Admissibility of Evidence.*

Defendant advances numerous claims of error with respect to the admission and exclusion of evidence. We think only two of them are sufficiently meritorious to deserve consideration at this time.

Defendant contends that the summary net worth chart used by the Government was a "monstrosity of errors" and should not have been introduced in evidence. We have recently considered at some length the conditions under which such summaries may be used. United States v. Altruda, 2 Cir., 1955, 224 F.2d 935. In that case we held that a schedule which omitted certain items was incomplete, inaccurate, and misleading, and hence should not have been admitted over objection. While it is not the court's function to decide which of various possible inferences should be drawn, it is the court's function to determine whether evidence is competent to justify certain inferences. See United States v. Valenti, 2 Cir., 1943, 134 F.2d 362, 364, certiorari denied 319 U.S. 761, 63 S.Ct. 1317, 87 L. Ed. 1712. Thus the trial court must scrutinize charts, summaries, schedules, etc. before they can be admitted into evidence, to see whether they fairly represent and summarize the evidence on which they are based. If they are fair representations, they are admissible. Costello v. United States, 1956, 350 U.S.

359, 76 S.Ct. 406, affirming 2 Cir., 1955, 221 F.2d 668; United States v. Altruda, supra; Kampmeyer v. United States, 8 Cir., 1955, 227 F.2d 313; Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382. We think that the charts involved here were reasonably accurate.

Defendant contends that the trial court erred in excluding certain documentary evidence offered by defendant. The reason for excluding this evidence was that the documents were alleged copies or summaries of originals which had been lost or destroyed by defendant or others. The trial court ruled that secondary proof should not be admitted unless defendant showed that the original records had existed and that they had not been destroyed by defendant with fraudulent design. Sellmayer Packing Co. v. Commissioner, 4 Cir., 1944, 146 F.2d 707, 709–710, and cases there cited; Reynolds v. Denver & Rio Grande Western R. Co., 10 Cir., 1949, 174 F.2d 673; Uniform Rules of Evidence, Rule 70(1). Cf. Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382, 387–388. We cannot say that the trial court's suspicions were unwarranted and that its action constituted an abuse of discretion. There was considerable evidence that defendant had not kept records and that he had intentionally destroyed what records existed. Moreover, there was evidence that he had attempted to bribe a bank official in order to obtain the removal of certain bank records. The burden was on defendant to lay a proper foundation for the admission of this secondary evidence. Sellmayer Packing Co. v. Commissioner, supra.

### 4. *Denial of Discovery and Bill of Particulars.*

Defendant argues that the trial court erred in denying his motions prior to trial for a bill of particulars and for discovery. Federal Rules of Criminal Procedure 7(f), 16, and 17(c). Rule 7 (f) provides that "The court for cause may direct the filing of a bill of particulars." Rule 16 provides for discovery and inspection of "designated books, papers, documents or tangible objects * * * upon a showing that the items

sought may be material to the preparation of his defense and that the request is reasonable." Rule 17(c) authorizes the issuance of a subpoena *duces tecum* for the production of documentary evidence. Although these rules have different functions and applications, they serve a related purpose: to enable the accused to meet the charges presented against him. They should be liberally interpreted to carry out this purpose. See Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879; Fryer v. United States, 1953, 93 U.S.App. D.C. 34, 207 F.2d 134, certiorari denied 346 U.S. 885, 74 S.Ct. 135, 98 L.Ed. 389. To the defendant seeking to prepare a defense to a net worth criminal prosecution it is no answer to say that he should have kept better records, or that his memory should have been better.[10] Of course, the defendant must not be allowed to rummage around freely in the Government's files or working papers, or avoid the burdensome chore of preparing for trial; but where he genuinely lacks knowledge, he should not be denied information relevant to his defense by a restrictive interpretation of the Federal Rules of Criminal Procedure.[11]

But in this case we need not decide whether the action of the trial court in denying defendant's motions constituted an abuse of discretion, since we are ordering a new trial for other reasons. Defendant is now fully apprised of the Gov-

ernment's case, and the problem should not arise on retrial.

#### 5. *Indictment Founded on Hearsay.*

Defendant contends that the indictment should have been dismissed because it was based entirely on hearsay evidence. Defendant does not appear to have raised this point below; but in any event we have recently decided the precise question against defendant's contention and have been upheld by the Supreme Court. Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, affirming 2 Cir., 1955, 221 F.2d 668, 676–679.

#### 6. *Reexamination of Defendant's 1946 Books in Violation of 26 U.S.C. § 3631.*

Prior to trial defendant moved to suppress all documents, records, and papers obtained during several reexaminations of defendant's 1946 books, on the ground that they were illegally obtained in violation of 26 U.S.C. (I.R.C. 1939) § 3631, now 26 U.S.C. (I.R.C.1954) § 7605(b).[12] Defendant did not claim that he had objected to these reexaminations, but merely that the Commissioner had not notified him in writing that his 1946 books were to be reexamined. Even assuming, *arguendo*, that this evidence is inadmissible because of the Commissioner's failure to provide taxpayer with the written notice mentioned in § 3631, defendant waived any objection by consenting to the reexamination. United

---

10. Cf. United States v. Caserta, 3 Cir., 1952, 199 F.2d 905, 910; United States v. Chapman, 7 Cir., 1948, 168 F.2d 997, 998–999. Bills of particulars have been quite freely granted in net worth and other tax evasion cases. Lufty v. United States, 9 Cir., 1956, 230 F.2d 643; Singer v. United States, 3 Cir., 1932, 58 F.2d 74; United States v. Peelle, D.C. E.D.N.Y.1954, 122 F.Supp. 923; United States v. Profaci, D.C.E.D.N.Y.1954, 124 F.Supp. 141; United States v. Witbeck, D.C.N.D.N.Y.1954, 122 F.Supp. 717; United States v. Giglio, D.C.S.D.N.Y. 1954, 16 F.R.D. 268; United States v. King, D.C.N.D.N.Y.1954, 16 F.R.D. 124; United States v. Boyer, D.C.N.D.W.Va. 1952, 13 F.R.D. 91. See Balter, What the Four New Supreme Court Net-Worth Decisions Mean to Tax Practitioners, 2 J.

Taxation 139, 345 (1955); Hill, The Defense of a Criminal Net Worth Tax Case in the Light of Recent Supreme Court Decisions, 41 Corn.L.Q. 106, 123–124 (1955).

11. United States v. Klein, D.C.S.D.N.Y. 1954, 124 F.Supp. 476, 479; United States v. Iozia, D.C.S.D.N.Y.1952, 13 F.R.D. 335.

12. 26 U.S.C. (I. R. C. 1939) § 3631:
"No taxpayer shall be subjected to unnecessary examinations or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Commissioner, after investigation, notifies the taxpayer in writing that an additional inspection is necessary."

States v. United Distillers Products Corp., 2 Cir., 1946, 156 F.2d 872; Sutor v. Commissioner, 1951, 17 T.C. 64; Thelma Blevins, 14 T.C.M. 840.

Judgment reversed and new trial ordered.